**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JOHN J. SABUCO, | |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | No. |
| PHILLIP A. PECELUNAS, an individual, and SYNERGYA PURE AND APPLIED SCIENCE, LTD., | |
| Defendants. | |

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff, JOHN J. SABUCO ("Mr. Sabuco"), an individual, by and through his attorneys, LAW OFFICES OF MARTIN J McKENZIE, LTD. ("McKenzieLaw"), and for his Complaint against defendants, PHILLIP A. PECELUNAS ("Mr. Pecelunas") and SYNERGYA PURE AND APPLIED SCIENCE, LTD., ("Synergya Illinois", and when used together with Mr. Pecelunas, "Defendants") states as follows:

## INTRODUCTION

Mr. Sabuco has, over a period of more than 40 years, established his reputation as an expert in the field of environmental engineering consulting. Since July 8, 2013, Mr. Sabuco conducted business in and around Chicago, Illinois and at other locations in and outside the United States, through his licensees, under the fanciful brand name of Synergya. Mr. Sabuco applied for and was granted, without opposition, federal registration of the service mark Synergya®, On September 9, 2019.

Mr. Sabuco is also the creator and sole owner of the fanciful common law mark

1

ΣYNERGYA, which Mr. Sabuco has also used to promote the Synergya brand since July 8, 2013.

From the period of July 8, 2013 to October 31, 2018, Mr. Sabuco granted an implied, naked license to Mr. Pecelunas to use the fanciful marks Synergya and the common law mark ΣYNERGYA for the benefit of Synergya Illinois.

Following the discovery by Mr. Sabuco of Mr. Pecelunas's mismanagement of Synergya Illinois in breach of their agreement concerning the management of Synergya Illinois, in June of 2017 Mr. Sabuco sought to terminate his formal relationship with Synergya Illinois pursuant to a written separation agreement. Mr. Pecelunas promptly reneged on the agreement after receiving its benefits.

As subsequent efforts to resolve the dispute between Mr. Sabuco and Mr. Pecelunas proved futile, Mr. Sabuco filed suit on December 31, 2017, in federal court. When attempts at settlement proved futile, Mr. Sabuco applied for federal registration of the fanciful mark Synergya on October 20, 2018, and the next day, hand-delivered a written demand to Mr. Pecelunas's counsel that demanded that Mr. Pecelunas cease and desist from all further use of the term Synergya.

Since October 31, 2018, however, Mr. Pecelunas willfully continued to use both Synergya® and the ΣYNERGYA common law mark for his, now competitive environmental services business. Mr. Pecelunas's ongoing misconduct includes the use of a URL and accompanying website and e-mail addresses, including Mr. Sabuco's former e-mail address, and each of which use the Synergya® mark.

Mr. Pecelunas has also, since October 31. 2018, continuously maintained Mr. Sabuco's former e-mail address at Synergya Illinois, and a toll-free telephone number long used by Mr. Sabuco which he failed to turn over to Mr. Sabuco as agreed. Because the Synergya Illinois client base is or was dominated by business relationships established by these customers' business cycle

2

may only require Mr. Sabuco's services periodically, many months may pass between a client engagements with Synergya Illinois, and repeat customer remain unaware of Mr. Sabuco's termination of his relationship with Synergya Illinois. Rather than forward inquiries directed to Mr. Sabuco's e-mail address or the toll-free number, however, Mr. Pecelunas repeatedly intercepted these communications, and then engaged the client without disclosing that Mr. Sabuco is no longer affiliated with Synergya Illinois, and that it is Mr. Pecelunas, and not the far more experienced and knowledgeable Mr. Sabuco, providing the actual services.

In "palming off" to the unsuspecting clients and the public, that Synergya Illinois is an entity in which Mr. Sabuco continues to be involved, Mr. Pecelunas seeks to continue to profit off his unauthorized use of Synergya® and ΣYNERGYA, as well as his past association with Mr. Sabuco and his non-disclosure or concealment of the termination of that relationship.

Further, Mr. Pecelunas continues to represent to the public on his company website, past environmental consulting projects where the work was performed by Mr. Sabuco, and in which Mr. Pecelunas had no material participation.

As a result of this willful and intentional conduct, Mr. Pecelunas has caused actual confusion in the marketplace.

Moreover, Mr. Pecelunas continues to represent to the public, the existence of Synergya Illinois, as a valid Illinois Corporation. Since its formation by Mr. Pecelunas, however, Synergya Illinois has been operated by Mr. Pecelunas in such a manner that to adhere to the fiction of a separate corporate existence would enable Mr. Pecelunas's ongoing fraudulent conduct, and the unjust and inequitable use by Mr. Pecelunas, in the name of Synergya Illinois, of the registered Synergya® name and common law mark.

Synergya Illinois has been chronically undercapitalized since its formation, causing it to

regularly overdraw its corporate bank account over which Mr. Pecelunas exercised dominion and control. Mr. Pecelunas has, on multiple occasions, failed to pay third party service providers, and employees.  Mr. Pecelunas, despite being the sole person to serve as a corporate officer of Synergya Illinois, has chronically failed to observe corporate formalities, failed to maintain corporate operational and financial records including tax returns, commingled funds between Synergya Illinois and himself, diverted assets from Synergya Illinois to and for the benefit of himself and his family members, and failed to maintain arms-length relationships between himself and Synergya Illinois.

Mr. Pecelunas's chronic failures and refusals *ab initio* to operate Synergya Illinois as a separate entity, have caused such a unity of interest and ownership that the separate personalities of Synergya Illinois and Mr. Pecelunas have long since failed to exist.

As a result of the aforementioned, Mr. Sabuco seeks injunctive and other relief against Mr. Pecelunas due to his unlawful use, through the veneer of Synergya Illinois, of Mr. Sabuco's registered and common law trademarks in violation of, *inter alia*, the Lanham Act, Title 15. If Mr. Pecelunas is allowed to continue to make unauthorized use of the Mr. Sabuco's registered and common law trademark, and to continue to falsely represent as his work, projects in which he played no substantive role, if any at all, Mr. Sabuco will suffer irreparable harm including harm to his reputation, for which monetary damages will not provide an adequate remedy.

Mr. Sabuco therefore also seeks a declaration that the acts and omissions of Mr. Pecelunas that cause Synergya Illinois to be a mere alter ego of Mr. Pecelunas, should cause the "corporate shield" against personal liability for his conduct in the name of Synergya Illinois to be disregarded entirely. Accordingly, Mr. Sabuco also seeks a finding that Mr. Pecelunas is personally liable for his acts and omissions in both individual capacity and in any capacity claimed to be in the name

of or on behalf of Synergya Illinois, as a matter of law.

Mr. Sabuco also seeks actual and punitive damages, and the recovery of his attorneys fees pursuant to and as applicable for Mr. Pecelunas's violations of the Lanham Act, the Illinois Deceptive Trade Practices Act, and the Illinois Consumer Fraud and Deceptive Businesses Practices Act.

## PARTIES, JURISDICTION AND VENUE

### The Parties

1. Plaintiff, Mr. Sabuco, is an individual and a citizen of the United States, who resides at 633 Lofty Lane, North Salt Lake, Utah. Mr. Sabuco offers his environmental science consulting services across the United States, including Illinois, through Synergya Applied Sciences, Inc., a Utah corporation formed and in continuous operation since April, 2017.

2. Co-Defendants, Mr. Pecelunas is an individual and a citizen of the United States, who resides at 7 Calico Court, Bolingbrook, Illinois.

3. Co-Defendants, Synergya Pure and Applied Science, Ltd., is an Illinois corporation, which currently lists its corporate address as 7 Calico Court, Bolingbrook, Illinois.

### Nature of the Action

4. This action arises under the Lanham Act, Title 15, Illinois common law, the Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510) and the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505). Mr. Sabuco seeks injunctive relief and actual damages, including Mr. Pecelunas's profits derived from his unauthorized trademark use and Mr. Sabuco's costs and attorneys' fees under 15 U.S.C. §1117 and 815 ILCS 510/3.

5. This court has jurisdiction over the matters raised herein pursuant to 28 U.S.C. §1331, 28 U.S.C. §1338(a) and (b), and 28 U.S.C. §1367(a).

6.      Venue in this matter is proper in this district because Mr. Pecelunas regularly does business in this District and pursuant to 28 U.S.C. §1391(b) and (c).

7.      This court has jurisdiction over the matters raised herein pursuant to 28 U.S.C. §1331, 28 U.S.C. §1338(a) and (b), and 28 U.S.C. §1367(a).

8.      Venue in this matter is proper in this district because Defendants regularly does business in this District and pursuant to 28 U.S.C. §1391(b) and (c).

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### July 8, 2013 - Mr. Sabuco's Creation of Fanciful Marks Synergya and ΣYNERGYA

9.      On July 8, 2013, Mr. Sabuco met with Mr. Pecelunas and Julie Buffington, for the purposes of, *inter alia*, forming an Illinois corporation to perform environmental consulting services, and to select, from a list of fanciful names created by Mr. Sabuco, a name for that entity (the "Pre-Incorporation Meeting"). A copy of the contemporaneous notes from the Pre-Incorporation Meeting are attached hereto as Exhibit "A".

10.     At the Pre-Incorporation Meeting, the attendees were asked for their input concerning the list of fanciful candidate names created and proposed by Mr. Sabuco, after which Mr. Sabuco selected from that list, the name of Synergya for the soon-to-be-formed corporation and in its future branding.

11.     At that time, Mr. Sabuco also created the common law mark ΣYNERGYA for use by the future entity, in those circumstances where the Greek Sigma symbol ("Σ") could be incorporated into the name on letterhead and other documents.

12.     At no time has Mr. Sabuco executed any document, or agree to execute any document, that transferred his right, title or interest in his sole ownership of the then common law mark Synergya, nor of the ΣYNERGYA common law mark, to any other real person or business entity.

6

13. At all times on and after July 8, 2013, Mr. Sabuco retained his exclusive ownership to all right, title and interest in the then common law mark Synergya, and the common law mark ΣYNERGYA (the "Common Law Mark").

**Mr. Sabuco is the Sole Owner of the Registered Service Mark Synergya®**

14. Mr. Sabuco owns U.S. Federal Trademark Registration No. 5,849,096 (the "Registered Mark"). This registration is for use in connection with his environmental engineering technical consulting services. A copy of the registration certificate of the Registered Mark are attached hereto as Exhibit "B".

**Mr. Sabuco is the Sole Owner of the Common Law Service Mark ΣYNERGYA**

15. Mr. Sabuco also owns and has always exclusively owned the Common Law Mark, which, when referenced together with the Registered Mark, constitute the "Service Marks").

16. The Service Marks have been continuously used in commerce in connection with Mr. Sabuco's consulting services, and those of his licensees, in the field of environmental engineering since on or before July 8, 2013.

17. Mr. Sabuco has engaged in, and continues to engage in environment consulting and related projects in the United States under the Synergya brand, and using the Service Marks in Utah, Arizona, Colorado, Idaho, Illinois, Indiana, Minnesota, Texas and Wyoming.

18. The Synergya brand, including the Service Marks, are well-known and famous in the Chicagoland area, in Illinois and throughout the United States in the field of environmental engineering.

19. The services offered by Mr. Sabuco and his licensees under Service Marks have been recognized in the industry and by the press, including coverage by WGN-TV, CBS, NBC, the *Chicago Tribune*, the *Chicago Sun-Times*.

20.     The Service Marks identify the source of the services of Mr. Sabuco in the minds of consumers of environmental consulting services, and related third-party service providers in the marketplace.

**Synergya Illinois Formation and Mr. Pecelunas's Disregard of**
**Corporate Formalities and Financial Mismanagement *Ab Initio***

21.     Following the meeting on July 8, 2013, Synergya Illinois was formed by Mr. Pecelunas, as its incorporator, on July 15, 2013.

22.     Mr. Pecelunas was, at all times relevant herein, the President and Secretary of Synergya Illinois, and that no other person has ever been named as a corporate officer of Synergya Illinois.

23.     As the only serving corporate officer of Synergya Illinois, Mr. Pecelunas was at all times relevant, under a legal obligation to comply with the requirements of the Illinois Business Corporations Act of 1983, 805 ILCS 5/1, et seq. (the "Corporations Act").

24.     At all times relevant herein, as one or more corporate officers of Synergya Illinois, Mr. Pecelunas was under a fiduciary duty to Synergya Illinois as a matter of law.

**Synergya Illinois's Chronic Insolvency**

25.     Mr. Pecelunas caused to be opened, a corporate bank account in the name of Synergya Illinois and ending in account number 2077 on or about August 18, 2013 (the "Corporate Bank Account").

26.     Mr. Pecelunas is the sole defendant in an ongoing matter in the Northern District of Illinois, 2017-CV-9372 in which Mr. Sabuco has alleged, *inter alia*, statutory fraud and claims against Mr. Pecelunas unrelated to Mr. Sabuco's Lanham Act claims (the "Fraud Lawsuit").

27.     In a deposition of Mr. Pecelunas conducted on December 19, 2019 in relation to the Fraud Lawsuit (the "Deposition"), Mr. Pecelunas testified that he exercised sole dominion and control over the Corporate Bank Account.

28.     Mr. Pecelunas was the sole signatory on the Corporate Bank Account between the period of August 18, 2013, and September 19, 2014, and at all times after June 26, 2017.

29.     In the Deposition, Mr. Pecelunas testified that he regularly reviewed the monthly statements of the Corporate Bank Account.

30.     Documents subpoenaed from the bank in the Fraud Lawsuit indisputably evidence that the Corporate Bank Account was overdrawn in not less than 10 of the 13 months during the period between its opening on August 18, 2013, and through September, 2014.

31.     The Corporate Bank Account incurred not less than $1,090.00 in overdraft charges during the five-month period between the account opening on August 18, 2013 and December 31, 2013.

32.     The Corporate Bank Account continued to be repeatedly overdrawn throughout 2014.  As a result, the Corporate Bank Account incurred $2,855.00 in overdraft charges for the period between January 1 – December 31, 2014.

33.     The Corporate Bank Account continued to be repeatedly overdrawn in 2015.  As a result, the Corporate Bank Account incurred $3,845.00 in overdraft charges for the period between January 1 – December 31, 2015.

34.     The Corporate Bank Account continued to be repeatedly overdrawn in 2016.  As a result, the Corporate Bank Account incurred $1,060.00 in overdraft charges for the period between January 1 – December 31, 2016.

35.     The Corporate Bank Account continued to be repeatedly overdrawn in the period of January to June of 2017.  As a result, the Corporate Bank Account incurred $1,235.00 in overdraft charges for the period between January 1 – June 30, 2017.

36.     Commencing on or about June 26, 2017, and at all times thereafter, Mr. Pecelunas was the sole signatory on the Corporate Bank Account.

37.     The Corporate Bank Account continued to be repeatedly overdrawn in the period of July. 2017 through December 2017.  As a result, the Corporate Bank Account incurred $580.00 in overdraft charges for the period between July 1 – December 31, 2017.

38.     At some date during the period between July 1, 2017 and December 31, 2017, Mr. Pecelunas caused to be opened a second bank account in the name of Synergya Illinois, ending in account number 2677 (the "2nd Corporate Bank Account").

39.     Mr. Pecelunas was the sole signatory on the 2nd Corporate Bank Account. Between the six-month period of July 1, 2017, through December 31, 2017, Mr. Pecelunas repeatedly caused the 2nd Corporate Bank Account to be overdrawn, As a result, the 2nd Corporate Bank Account incurred $175.00 in overdraft charges for the six-month period between July through December 2017.

40.     Mr. Pecelunas caused the Corporate Bank Account to be repeatedly overdrawn in 2018. As a result, the Corporate Bank Account incurred $950.00 in overdraft charges for the period between July 1 – December 31, 2018.

41.     Mr. Pecelunas caused the Corporate Bank Account to be repeatedly overdrawn in 2019. As a result, the Corporate Bank Account incurred $45.00 in overdraft charges for the period between January 1 – April 30, 2019.

42.     Mr. Pecelunas caused the Corporate Bank Account to be closed, upon information and belief, at a date uncertain prior to December 31, 2019.

43.     Upon information and belief, at some time during or after September 2019, Mr. Pecelunas has either closed the 2nd Corporate Bank Account, or has continued to cause the 2nd Corporate Bank Account to be repeatedly overdrawn since April 2019, and thereby to regularly continue to incur overdraft fees against Synergya Illinois.

44.     As a consequence of Mr. Pecelunas's chronic overdraws on the Corporate Bank Account and 2nd Corporate Bank Account commencing in 2013 and continually thereafter into 2019, Synergya Illinois has been repeatedly insolvent.

**Undercapitalization of Synergya Illinois Caused by Mr. Pecelunas**

45.     At no time did Mr. Pecelunas personally invest or cause any other capital investment in Synergya Illinois.

46.     The sole source of capital of Synergya Illinois was the revenue generated by its day-to-day business operations.

47.     As a result of Mr. Pecelunas's acts and omissions in managing the Corporate Bank Account that resulted in repeatedly overdrawing the Corporate Bank Account and incurring thousands of dollars in overdraft charges between August 2013 and April 2019, and upon information and belief, continuing thereafter, Synergya Illinois was continually undercapitalized.

48.     As a result of this undercapitalization, Mr. Pecelunas failed to pay for Synergya Illinois financial obligations, including but not limited to invoices from service providers for job costs associated with Synergya Illinois projects, Synergya Illinois employee wages and related employment taxes, and federal and state income taxes and contributions to social security.

**Failure to Issue Stock**

49. In the course of the Fraud Lawsuit, Mr. Pecelunas has repeatedly asserted that he is the sole "owner" of Synergya Illinois.

50. In connection with the Fraud Lawsuit, Mr. Pecelunas was requested on November 11, 2018 and pursuant to FRCP 34, to produce certain documents (the "First Production Request").

51. The First Production Request sought, *inter alia*, all documents evidencing Mr. Pecelunas's acquisition of his ownership interest in Synergya Illinois.

52. In his response to the First Production Request, Mr. Sabuco produced the articles of incorporation of Synergya Illinois from July 15, 2013, that authorized and issued 1,000 shares, and the Synergya Annual Report of 2014 (the "2014 Annual Report"). Nowhere in the articles of incorporation of Synergya Illinois or the 2014 Annual Report is there any text to designate the owner of any of the shares of Synergya Illinois.

53. Mr. Pecelunas never produced any stock certificates issued by Synergya Illinois in response to the First Production Request, or at any time thereafter.

In the Deposition, Mr. Pecelunas admitted that he never generated any Synergya Illinois stock certificates. Mr. Pecelunas also asserted in the Deposition that he was under no legal obligation to issue stock certificates, because he was the "owner" of Synergya Illinois.

**Failure to Maintain Corporate Formalities**

54. Mr. Pecelunas had primary responsibility for maintaining the Synergya Illinois computers and all backups thereof.

55. At all times relevant following the formation of Synergya Illinois, Mr. Pecelunas had unfettered access to and control of the Synergya Illinois computer server and all backups thereof.

56.     Since on or after June 26, 2017, Mr. Pecelunas has had exclusive access to and control of the Synergya Illinois computer server and all backups thereof.

57.     Pursuant to the First Production Request #5(f), Mr. Pecelunas was requested to produce, in addition to the articles of incorporation and stock certificates, all of the Synergya Illinois: annual reports to the Illinois Secretary of State, shareholder agreements, notices and minutes of meetings of shareholders, officers and directors, and all resolutions, and transfers of interests.

58.     In response to the First Production Request #5(f), that requested all documents evidencing his ownership interest in Synergya Illinois, Mr. Pecelunas produced only the Synergya Illinois articles of incorporation from 2013, and the 2014 Annual Report.

59.     The 2014 Annual report included a payment of an additional $2.50 because it was filed late. In his Answer the Complaint in the Fraud Lawsuit, Mr. Pecelunas denied that any corporate annual report had been untimely filed.

60.     At some time yet to be determined after filing the 2014 Annual Report, Mr. Pecelunas caused Mr. Sabuco's name to be removed as a director of Synergya Illinois.

61.     In response to the First Production Request, however, Mr. Pecelunas:

(a)     did not produce any annual report of Synergya Illinois after 2014;

(b)     did not produce any notice of any annual meeting of Synergya Illinois directors, shareholders or officers;

(c)     did not produce any minutes of Synergya Illinois meetings of directors, shareholders, or officers;

(d)     did not produce any documents evidencing transfers of interest of Synergya Illinois.

62.     Mr. Pecelunas certified that his Response to the First Production Request was complete on June 14, 2019.

63.     Mr. Pecelunas never offered any excuse or explanation for the absence of corporate records in his Response to the First Production Request.

64.     Mr. Pecelunas never supplemented the First Production Request after June 14, 2019.

**Failure to Maintain Corporate Agreements And Financial Records**

65.     Mr. Pecelunas did not create or cause to be created, any by-laws or shareholder agreements for Synergya Illinois.

66.     Mr. Pecelunas did not produce any by-laws or shareholder agreements for Synergya Illinois in response to the First Production Request.

67.     In his Answer to the Complaint in the Fraud Lawsuit, Mr. Pecelunas denied that he had failed to timely file federal or Illinois tax returns on behalf of Synergya Illinois for one or more tax years commending in 2013.

68.     Mr. Pecelunas never produced any federal or Illinois tax returns of Synergya Illinois, nor any evidence that such returns had been filed, in response to the First Production Request, nor at any time thereafter.

69.     In the Deposition, Mr. Pecelunas asserted his 5th Amendment privilege to refuse to answer any questions concerning federal or Illinois tax returns filed by Mr. Pecelunas on behalf of Synergya Illinois for the years 2013, 2014, 2015, 2016, 2017 and 2018.

70.     Upon information and belief, and notwithstanding his denials in his Answer to the Complaint in the Fraud Lawsuit, Mr. Pecelunas has never filed, or caused to be filed, federal or Illinois tax returns of Synergya Illinois for one or more of the years of 2013-2018, inclusive.

**Failure to Maintain Arms-Length Relationships Between Owners and Principals**

71.     Mr. Pecelunas, in the Fraud Lawsuit, has at all times relevant herein maintained that Mr. Sabuco's relationship to Synergya Illinois was that of, alternately a mere employee or independent contractor.

72.     In his Answer to the Complaint in the Fraud Lawsuit, Mr. Pecelunas denied that he or Mr. Sabuco were to be compensated by Synergya Illinois as an independent contractor.

73.     Mr. Pecelunas admitted in the Deposition, however, that no written employment agreement or independent contractor agreement was ever drafted by or on behalf of Mr. Pecelunas to establish Mr. Sabuco's status as an independent contractor to Synergya Illinois.

74.     In his Answer to the Complaint in the Fraud Lawsuit, Mr. Pecelunas denied his failure to provide 1099 forms to Mr. Sabuco.

75.     In response to First Document Request #5(h), Mr. Pecelunas never produced any W-2 or 1099 forms issued by Synergya Illinois to any person.

76.     At the Deposition, Mr. Pecelunas admitted that he had never created or caused to be created any document that:

(a)     Agreed to the transfer of any asset from any individual or entity to Synergya Illinois;

(b)     Agreed to transfer assets from any individual or entity to himself, individually, whether for his personal benefit or for the benefit of Synergya Illinois;

(c)     Registered the name Synergya or ΣYNERGYA as a trademark with any state or federal entity;

(d)     assigned or licensed any intellectual property from any individual or entity to Synergya Illinois;

(e)     assigned or licensed any intellectual property from any individual or entity to himself, individually, whether for his personal benefit or for the benefit of Synergya Illinois;

     (f)     constitutes an employment agreement between Synergya Illinois and Mr. Sabuco;

     (g)     constitutes an independent contractor agreement between Synergya Illinois and Mr. Sabuco.

77.    Mr. Pecelunas did not produce, in response to the First Production Request or at any time thereafter, any document that:

     (a)     Agreed to the transfer of any asset from any individual or entity to Synergya Illinois;

     (b)     Agreed to transfer assets from any individual or entity to himself, individually, whether for his personal benefit or for the benefit of Synergya Illinois;

     (c)     Registered the name Synergya or ΣYNERGYA as a trademark with any state or federal entity;

     (d)     assigned or licensed any intellectual property from any individual or entity to Synergya Illinois;

     (e)     assigned or licensed any intellectual property from any individual or entity to himself, individually, whether for his personal benefit or for the benefit of Synergya Illinois;

     (f)     purported to be an employment agreement between Synergya Illinois and Mr. Sabuco;

     (g)     purported to be an independent contractor agreement between Synergya Illinois and Mr. Sabuco;

     (h)     purported to be an employment agreement between Synergya Illinois and Mr. Pecelunas;

     (i)     purported to be an independent contractor agreement between Synergya Illinois and Mr. Pecelunas;

     (j)     purported to be an employment agreement between Synergya Illinois and any other individual;

     (k)     purported to be an independent contractor agreement between Synergya Illinois and any other third-party individual or entity.

**Commingling of Funds**

78.     Mr. Pecelunas regularly and systematically commingled funds from the Corporate Bank Account and used the Corporate Bank Account and corresponding debit card for a plethora of personal purchases, including but not limited to:

 (a) Payments for his daughter's college tuition;

 (b) Personal cell phones and accounts for Mr. Pecelunas's family members;

 (c) Merchandise from Dick's Sporting Goods;

 (d) Personal dining and entertainment for Mr. Pecelunas, individually, and his family members;

 (e) iTunes content;

 (f) Various purchases from Walgreens and CVS Pharmacy that were not submitted as business expenses;

 (g) Gasoline and other operating expenses for two vehicles personally owned and used by Mr. Pecelunas or his spouse, without documentation of business usage;

 (h) Health care for Mr. Pecelunas's wife;

 (i) Retail purchases at the Vitamin Store without documentation as business expenses;

 (j) Payments for vacation expenses.

79.     No member of Mr. Pecelunas's family was ever employed by Synergya Illinois at any time relevant herein.

80.     From the period commencing August 2013, through the closing of the Corporate Bank Account and 2nd Corporate Bank Account, Mr. Pecelunas withdrew tens of thousands of dollars in cash from each account via checks written to and signed by himself.

81.     None of the aforementioned checks were accounted for by Mr., Pecelunas, including but not limited to any corresponding mandated withholdings for federal, state, or local taxes, social security, or other purposes.

82.     From the period commencing August 2013 through the closing of the Corporate Bank Account and 2nd Corporate Bank Account, Mr. Pecelunas withdrew tens of thousands of dollars in cash from each account via the Corporate Bank Account's and 2nd Corporate Bank Account's corresponding debit cards, and used at Automated Teller Machine ("ATM") and point of sale terminal withdrawals (collectively, the "ATM withdrawals").

83.     None of the aforementioned ATM withdrawals were accounted for by Mr., Pecelunas, including but not limited to any corresponding mandated withholdings for federal, state, or local taxes, social security, or other purposes.

84.     None of the personal expenses paid for with Synergya Illinois funds were ever reimbursed by Mr. Pecelunas to Synergya Illinois.

85.     Mr. Pecelunas did not produce any documents in response to the First Document Request #1, to support his denial of allegations of personal use of Synergya Illinois funds from the Corporate Bank Account, or of his failure to repay those personal uses of Synergya Illinois funds to the Corporate Bank Account.

86.     In his Answer to ¶26 of the Fraud Lawsuit, Mr. Pecelunas admitted that he and Mr. Sabuco had agreed that:

(a)     Mr. Sabuco and Mr. Pecelunas would share profits of the Company [Synergya Illinois] equally;

(b)     Profits would be determined by a specific formula, following:

(i)     Payment for all job costs;

(ii)    Payment or allocation for business overhead, health care, and salaries;

(iii)   Allocation for estimated corporate taxes; and

(iv)    Payment or allocation for reimbursable expenses incurred by Mr. Sabuco or Mr. Pecelunas.

18

87.     Mr. Pecelunas agreed to the course of dealing with Mr. Sabuco concerning Synergya Illinois described in the preceding numbered paragraph.

88.     Notwithstanding his agreement to comply with the course of dealing with Synergya Illinois set forth herein and in Exhibit B to the Fraud Lawsuit, and his admission in paragraph 26 of his Answer in the Fraud Lawsuit to the terms of Exhibit B as the agreed course of dealing between Mr. Pecelunas and Synergya Illinois, Mr. Pecelunas repeatedly disregarded that course of dealing by, *inter alia*, failing to first pay Synergya Illinois service providers, employees, and corporate taxes in favor of his personal use of the Synergya Illinois Corporate Bank Account and the funds contained therein.

**Diversion of Assets From Synergya Illinois To Himself**

89.     Synergya Illinois was entirely self-funded by its earnings, and not by outside capital contributions.

90.     Synergya Illinois's primary asset was at all times relevant herein, the cash generated by its business operations.

91.     Mr. Pecelunas's payments of cash to himself directly, and for personal use by himself and family members in excess of net profits as set forth in Exhibit B, violated Mr. Pecelunas's admitted agreement to comply with the terms set forth in in Exhibit B.

92.     Mr. Pecelunas's personal use of Corporate Bank Account funds, while failing to maintain proper expense accounting to distinguish between net profits, reimbursable expenses, and personal use of Synergya Illinois cash assets, caused Synergya Illinois assets to be diverted from the Corporate Bank Account directly to and for the benefit of Mr. Pecelunas and his family members.

93.     Mr. Pecelunas's personal use of Corporate Bank Account funds in excess of amounts funds that he had agreed to prioritize for payment of job costs, overhead, and taxes, caused Synergya Illinois assets to be diverted from the Corporate Bank Account directly to and for the benefit of Mr. Pecelunas and his family members.

**Defendants' Infringing Use Of The Service Marks**

94.     Defendants are operating a business under the name Synergya Pure and Applied Science, Ltd., using the Service Marks for the sale to the public of environmental consulting services without the authorization of Mr. Sabuco (the "Infringing Use").

95.     Defendants have solicited and sold services to, and continues to actively solicit and sell environmental consulting services through the use of the Service Marks without authorization to, *inter alia*, companies and persons known by Mr. Pecelunas to be long-time clients of Mr. Sabuco who would not do business with Mr. Pecelunas or Synergya Illinois if they knew that Mr. Sabuco was no longer affiliated with Synergya Illinois (the "Exclusive Clients").[1]

96.     Defendants have caused and are likely to continue to cause confusion in the marketplace in that the Infringing Use includes the ongoing use of the Service Marks in the Synergya Illinois business name, website, e-mail addresses, and correspondence with the Exclusive Clients that include solicitations and intercepting inbound communications intended for Mr. Sabuco. In addition, Mr. Sabuco's inability to control the quality of the services of Defendants distributed under the Service Marks creates a potential health and safety concern.

---

[1] A list of the Exclusive Clients will be produced for in camera inspection following the entry of an appropriate protective order.

97.     Mr. Sabuco is unable to control the quality of the services sold or offered for sale by Defendants and therefore will be irreparably harmed if the Infringing Use is permitted to continue.

98.     Defendants knowingly use the Service Marks to exploit and misappropriate the goodwill and reputation of Mr. Sabuco, that is based on Mr. Sabuco's and Mr. Sabuco's licensees' respective uses of the Service Marks.

99.     Over the past forty years, Mr. Sabuco has developed the unique knowledge, skill, expertise, relationships and methodologies for the preparation and documentation of the services provided by Mr. Sabuco and his licensees (the "Confidential Information and Trade Secrets"), since 2013, under the Service Marks.

100.     Mr. Sabuco takes numerous other steps to promote and protect the Synergya® brand, including:

(a)     Enforcing his Service Marks and other intellectual property against individuals or entities who attempt to unlawfully use the Synergya® brand name;

(b)     Only divulging the Confidential Information and Trade Secrets to persons employed by Mr. Sabuco or his licensees, and who have a need to know such information;

(c)     Requiring that persons employed by Mr. Sabuco or his licensees with such need-to-know, sign confidentiality agreements restricting the use and disclosure the Confidential Information and Trade Secrets;

(d)     Restricting and maintaining control over the licensing of the Service Marks.

101.     Mr. Sabuco primarily advertises his services via word-of-mouth, and relies on repeat business from his clients. Mr. Sabuco's clients, at times, require his unique expertise and services on an irregular basis which may be several months between engagements, and so the use of the Synergya® brand becomes embedded in hard copy and electronic correspondence, and branding of reports and other work product generated by Mr. Sabuco and his licensees.

102.     Mr. Sabuco and his licensees also promote the Synergya® brand name through digital media, including but not limited to Facebook, Twitter, and the website www.synergya-science.

**Mr. Sabuco's Oral License To Mr. Pecelunas For The Benefit Of Synergya Illinois,
July 2013 – October 2018**

103.     Between the periods of July 8, 2013 through October 30, 2018, Mr. Sabuco granted, via an oral license to Mr. Pecelunas, the non-exclusive use of the name Synergya and ΣYNERGYA as common law marks (the "Oral License") to the then yet-to-be formed Synergya Illinois.

104.     Pursuant to the Oral License, Mr. Pecelunas caused to be formed, the Illinois For Profit Corporation, Synergya Pure and Applied Science, Ltd ("Synergya Illinois").

105.     Pursuant to the Oral License, Mr. Sabuco also authorized the use, by Synergya Illinois, of a toll-free telephone number then in Mr. Sabuco's possession and control, which was [800.637.6608].

106.     Pursuant to the Oral License, Mr. Sabuco acquired a domain name of www.synergya.co, and corresponding e-mail accounts that include but are not limited to ppecelunas@synergya.co and jsabuco@synergya.co].

107.     On October 31, 2018, counsel for Mr. Sabuco hand delivered a written letter to the then counsel for Mr. Pecelunas, and thereby advised Mr. Pecelunas that Mr. Sabuco was exercising his right of absolute ownership of the name Synergya as a common law mark, to revoke the existing implied naked license for Synergya Illinois, and to demand that Mr. Pecelunas cease and desist all further use of the name Synergya, with immediate effect.  In that same letter, Mr. Sabuco advised Mr. Pecelunas that Mr. Sabuco had commenced formal registration of the then common law mark Synergya with the United States Patent and Trademark Office, A copy of said letter (the "Cease and Desist Letter") is attached hereto as Exhibit "C".

108. Defendants have failed and refused to comply with the demands set forth in the Cease and Desist Letter and, as of the date of this Complaint, continue their unlawful use of the both the Registered Mark and the Common Law Mark.

**Ongoing Actual Confusion In The Market, And Damages**

109. As a direct and proximate cause of Defendants' use of the Registered Mark and the Common Law Mark, Defendants have caused actual confusion in the marketplace, including but not limited to:

(a) An engagement of Synergya Illinois by First Secure Bank and Trust in or about September, 2019, in which First Secure Bank mistakenly engaged Synergya Illinois believing that Mr. Sabuco was handling the engagement;

(b) As yet other unknown engagements by Mr. Pecelunas in the name of Synergya Illinois.

110. Mr. Sabuco has incurred, and continues to incur damages to an unknown extent that is proximately caused by the Defendants; willful infringing conduct and disregard of the Cease and Desist Letter.

111. A copy of this complaint was tendered to Mr. Pecelunas in his individual capacity, and upon Mr. Pecelunas as the registered agent of Synergya Illinois.

**COUNT I**
**REQUEST FOR DECLARATORY RELIEF**
**(Against All Defendants)**

**BACKGROUND**

112. Mr. Sabuco repeats, re-alleges, and incorporates by reference all prior paragraphs Verified Complaint is fully set forth herein in this paragraph.

**ACTUAL CONTROVERSY REQUIRES A DECLARATION OF**
**RIGHTS AND DUTIES BETWEEN THE PARTIES**

**Actual Controversy Exists Between Mr. Sabuco and Defendants**

113. As set forth herein, an actual controversy exists between Mr. Sabuco and Mr. Pecelunas individually and in his capacity as president and secretary of his alter ego, Synergya Illinois. Pursuant to 735 ILCS 5/2-701 of the Illinois Code of Civil Procedure, this Court is empowered to declare the rights and duties of the parties.

**Mr. Sabuco's Tangible Interests In Outcome Declaring Rights**

114. Mr. Sabuco has a tangible interest in the form of his sole and absolute right, title and interest in the authorized use of the Registered Mark and Common Law Mark, which has and continues to be unlawfully used by Mr. Pecelunas and Synergya Illinois as Mr. Pecelunas's Alter Ego.

**Declaration Necessary To Avoid Injustice to Mr. Sabuco's Tangible Interests**

115. By permitting Mr. Pecelunas to assert the separate existence of Mr. Pecelunas and Synergya Illinois, Mr. Pecelunas continues to benefit from his unlawful conduct as described herein, including but not limited to the unlawful use of the Registered Mark and Common Law Mark to compete with Mr. Sabuco. Such a result would condone and continue an injustice upon Mr. Sabuco.

116. Therefore, Mr. Sabuco seeks a declaration by this Court that the aforementioned acts and omissions of Mr. Pecelunas have established such a unity of interest and ownership between and among Mr. Pecelunas individually and Synergya Illinois, that to uphold the separate corporate existence would have the effect of encouraging fraud, promoting injustice, or promoting inequitable consequences against Mr. Sabuco.

WHEREFORE, Plaintiff, John J. Sabuco prays that this Court enter an Order:

    a. Finding Count I for Declaratory Relief to be sufficient;

b. Declaring that there exists a unity of ownership between Mr. Pecelunas and Synergya Illinois;

c. Declaring that Synergya Illinois shall be hereinafter regarded as Mr. Pecelunas in his individual capacity;

d. Declaring that Mr. Pecelunas is hereby barred from asserting any right or defense that is in any way predicated upon a shield from personal liability relating to Synergya Illinois;

e. Declaring that Mr. Pecelunas shall Answer or otherwise respond to each this Verified Complaint, and any subsequent pleading or discovery request relating thereto, and any subsequent order relating thereto, that names or is otherwise directed to Synergya Illinois, as though directed to Mr. Pecelunas personally; and

f. Such other and further relief as this Court deems just and proper.

## COUNT II
## <u>Trademark Infringement Pursuant to</u>
## <u>§32 of The Lanham Act (15 U.S.C. §1114)</u>

### <u>(Against All Defendants)</u>

117. Mr. Sabuco adopts, restates and realleges each and every allegation previously set forth in this Complaint as if fully set forth in this paragraph.

118. Mr. Sabuco is the sole and exclusive owner of the Registered Mark and the Common Law Mark.

119. Through the marketing, operation and licensing activities of Mr. Sabuco related to environmental engineering consulting services under the Registered Mark and the Common Law Mark, and the services and goodwill associated therewith have become well known to the general public and in the environmental engineering consulting services industry. The Registered Mark

and the Common Law Mark distinguish Mr. Sabuco, his services and those of his licensees, and the goodwill associated therewith from that of its competitors.

120.     Section 1114 of the Lanham Act provides in pertinent part:

(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114.

121.     Defendants' use and continued use of the Registered Mark and the Common Law Mark in providing substantially similar services, is an infringement of Mr. Sabuco's well established trademark rights under U.S. trademark laws and constitutes federal trademark infringement pursuant to Section 32 of The Lanham Act (15 U.S.C. § 1114).

122.     Defendants' Infringing Use is without license from or permission by Mr. Sabuco.

123.     By the Infringing Use, Defendants have caused and will continue to cause confusion in the marketplace and mislead the public into believing that Defendants' services are associated with, or connected to, Mr. Sabuco, thereby depriving Mr. Sabuco and his licensees the goodwill attached to their services.

26

124.    Defendants' Infringing Use in the same industry as Mr. Sabuco is wrongful, intentional and in deliberate and knowing disregard of Mr. Sabuco's exclusive ownership rights. Despite Defendants' direct, actual knowledge of the Registered Mark and Common Law Mark and Defendants continue the Infringing Use.

125.    The trademark infringement complained of herein has caused and, unless restrained and enjoined, will cause irreparable harm, damage and injury to Mr. Sabuco and creates a potential health and safety issue, for which Mr. Sabuco has no adequate remedy at law.

**COUNT III**
**Federal Unfair Competition Pursuant to**
**§43(a) of The Lanham Act (15 U.S.C. §1125(a))**

**(Against All Defendants)**

126.    Mr. Sabuco adopts, restates and realleges each and every allegation previously set forth in this Complaint as if fully set forth in this paragraph.

127.    The Registered Mark and the Common Law Mark, as used by Mr. Sabuco in connection with his environmental engineering consulting services, is inherently distinctive and/or has acquired secondary meaning.

128.    Section 1125(a) of the Lanham Act provides in pertinent part:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

27

> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.
>
> 15 U.S.C. § 1125(a).

129.     Defendants' Infringing Use in connection with services identical to those offered by Mr. Sabuco or its licensees under the Registered Mark and the Common Law Mark and constitutes infringement of Mr. Sabuco's rights in the Service Marks and is likely to create confusion, or to cause mistake, or to deceive as to the origin, sponsorship or approval of Defendants' services by Mr. Sabuco, in violation of 15 U.S.C. §1125.

130.     Defendants deliberately and knowingly adopted, used and continues Infringing Use in bad faith, with the intent to trade upon the goodwill established by Mr. Sabuco, to create confusion in the public mind, and to misappropriate Mr. Sabuco's rights in the goodwill he has established in the Registered Mark and the Common Law Mark, all to the irreparable injury of Mr. Sabuco.

131.     The unlawful activities of Defendants complained of herein has caused and, unless restrained and enjoined, will cause irreparable harm, damage and injury to Mr. Sabuco and creates a potential health and safety issue, for which Mr. Sabuco has no adequate remedy at law.

132.     Section 1117 of the Lanham Act in pertinent part provides:

> (a) Profits; damages and costs; attorney fees
>
> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover:
>
> (1) Defendants' profits,
>
> (2) any damages sustained by the plaintiff, and
>
> (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required

to prove Defendants' sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

15 U.S.C. § 1117.

133.    Defendants' deliberate adoption and use of the Registered Mark and the Common Law Mark with the intent to trade upon the goodwill established by Mr. Sabuco in bad faith makes this case an exceptional case for which an award of Mr. Sabuco's reasonable attorney's fees and exemplary damages is warranted.

## COUNT IV
## Trademark Dilution Pursuant to
## §43(c) of The Lanham Act (15 U.S.C. §1125(c))

### (Against All Defendants)

134.    Mr. Sabuco adopts, restates and realleges each and every allegation previously set forth in this Complaint as if fully set forth in this paragraph.

135.    The Registered Mark and the Common Law Mark are both widely recognized by the general consuming public of the United States as a designation of source of Mr. Sabuco's and Mr. Sabuco's Licensees' services.

136.    Section 1125(c) of the Lanham Act provides in pertinent part:

c) Dilution by blurring; dilution by tarnishment

(1) Injunctive relief

Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall

29

be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c).

137. The Registered Mark and Common Law Mark have become famous, *inter alia*, due to: (1) Mr. Sabuco's use since at least 2013, (2) the significant sales of services under the Registered Mark and Common Law Mark; and (3) the extensive advertising and marketing activities under the Registered Mark and the Common Law Mark.

138. Defendants' Infringing Use is likely to harm Mr. Sabuco by impairing the distinctiveness of the Registered Mark and the Common Law Mark.

139. Defendants' Infringing Use is likely to harm Mr. Sabuco by harming the reputation or goodwill symbolized by the Registered Mark and the Common Law Mark since Defendants' use is not controlled or monitored by Mr. Sabuco.

140. The unlawful activities of Defendants complained of herein has caused and, unless restrained and enjoined, will cause irreparable harm, damage and injury to Mr. Sabuco and creates a potential public health and safety issue, for which Mr. Sabuco has no adequate remedy at law.

**COUNT V**
**Illinois Uniform Deceptive and**
**Unfair Trade Practices Act**

**(Against All Defendants)**

141. Mr. Sabuco adopts, restates and realleges each and every allegation previously set forth in this Complaint as if fully set forth in this paragraph.

142. Section 510/2 of the Illinois Uniform Deceptive Trade Practices Act (the "UDTPA") provides, in relevant part that:

A person engages in deceptive trade practices when, in the course of his business, location, or occupation, he:

(1)     passes off goods or services as those of another;

(2)     causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

(3)     causes likelihood of confusion or of misunderstanding as to the affiliation, connection or association with or certification by another;

.   .   .

(12)   engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

815 ILCS 510/2.

143.    Defendants' Infringing Use constitutes infringement when used in connection with environmental engineering consulting services offered by Defendants without Mr. Sabuco's consent. Defendants' use is an attempt to pass off Defendants' services as those of Mr. Sabuco and causes a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of Defendants' services all in violation of Section 2 of the UDTPA.

144.    Defendants have willfully engaged in deceptive trade practices prohibited by Section 2 of the UDTPA, in that Defendants adopted, used and continues to use the Registered Mark and the Common Law Mark with the intent to trade upon the goodwill established by Mr. Sabuco under the Registered Mark and Common Law Mark, to create confusion in the public mind and to misappropriate Mr. Sabuco's rights in the goodwill they have established, all to the irreparable injury of Mr. Sabuco.

145.    The unlawful activities of Defendants complained of herein has caused and, unless restrained and enjoined, will cause irreparable harm, damage and injury to Mr. Sabuco and creates a potential health and safety issue, for which Mr. Sabuco has no adequate remedy at law.

**COUNT VI**
**Illinois Consumer Fraud and**
**Deceptive Business Practices Act**

146.     Mr. Sabuco adopts, restates and realleges each and every allegation previously set forth in this Complaint as if fully set forth in this paragraph.

147.     Section 505/2 of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "CFDBPA") provides:

> Unfair deceptive acts or practices, including but not limited to. . . the use or employment or any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, and the conduct of any trade or commerce are hereby declared unlawful whether in fact any person has been misled, deceived or damaged thereby.

815 ILCS 505/2.

148.     Defendants' violation of the UDTPA, by their use and employment of deceptive trade practices, constitutes a violation of Section 2 of CFDBPA.

149.     The unlawful activities of Defendants complained of herein has caused and, unless restrained and enjoined, will cause irreparable harm, damage and injury to Mr. Sabuco and create a potential health and safety issue, for which Mr. Sabuco has no adequate remedy at law.

**COUNT VII**
**Common Law Unfair Competition**

150.     Mr. Sabuco adopts, restates and realleges each and every allegation previously set forth in this Complaint as if fully set forth in this paragraph.

151.     Defendants' Infringing Use in connection with services and in connection with advertisements and/or marketing materials used to promote such services that are identical to the services offered by Mr. Sabuco under the Registered Mark and the Common Law Mark, without Mr. Sabuco's consent, is an attempt to pass off Defendants' services as those of Mr. Sabuco; causes

a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of Defendants' services; causes a likelihood of confusion or of misunderstanding as to affiliation, connection or association between Defendants and Mr. Sabuco; and/or creates a likelihood of confusion or misunderstanding among consumers, generally as between the services of Defendants and those of Mr. Sabuco, and constitutes unfair competition under the laws of the State of Illinois.

152.    Defendants have intentionally and willfully engaged in unfair competition in that Defendants adopted, used and continue to use the Registered Mark and the Common Law Mark with the intent to trade upon the goodwill established by Mr. Sabuco under the Registered Mark and the Common Law Mark, to create confusion in the public mind, and to misappropriate Mr. Sabuco's rights and the goodwill they have established, all to the irreparable injury of Mr. Sabuco.

153.    The acts of Defendants complained of herein constitute inequitable pirating of the fruits of Mr. Sabuco's labor and are acts of unfair competition in violation of Illinois common law. Defendants' acts of unfair competition were done and continue to be done knowingly, intentionally and willfully.

154.    Defendants will continue to engage in unfair competition with Mr. Sabuco unless enjoined by this Court.

155.    The unlawful activities of Defendants complained of herein has caused and, unless restrained and enjoined, will cause irreparable harm, damage and injury to Mr. Sabuco and create a potential health and safety issue, for which Mr. Sabuco has no adequate remedy at law.

## PRAYER FOR RELIEF, COUNTS II THROUGH VII

**WHEREFORE,** Plaintiff, John J. Sabuco, prays that this Court:

(a)     Temporarily, preliminarily and permanently enjoin, pursuant to 15 U.S.C. §1116, 815 I.L.C.S. 510/3 and other applicable law, Defendants, their representatives, officers, directors, agents, servants, employees and attorneys and any and all persons in active concert with them from using, in any fashion, the Infringing Use, the Registered Mark, the Common Law Mark, or any variations thereof or any trade name, trademark or service mark confusingly or deceptively similar to the Registered Mark or the Common Law Mark, in connection with the promotion, advertising, solicitation, operation, conduct and expansion of Defendants' business in particular, in connection with Defendants' environmental engineering consulting services in the state of Illinois and nationally, or otherwise competing unfairly with Mr. Sabuco;

(b)     Order Defendants, their representatives, officers, directors, agents, servants, employees and attorneys and any and all persons in active concert with them to remove any and all advertising or promotional material that contains the Infringing Use, the Registered Mark, the Common Law Mark, or any variations thereof or any trade name, trademark or service mark confusingly or deceptively similar to the Registered Mark or the Common Law Mark;

(c)     Order, pursuant to 15 U.S.C. §1118 and other applicable law, Defendants, their representatives, officers, directors, agents, servants, employees and attorneys and any and all persons in active concert with them to deliver to Mr. Sabuco for destruction, all advertisements, brochures, promotional materials, signs, stationery, business cards, other written material or videotapes or digital content, clothing, personal accessories, or any other product or thing which depicts or otherwise discloses the Infringing Use, the Registered Mark, the Common Law Mark, or any variations thereof or any trade name, trademark or service mark confusingly or deceptively similar to the Registered Mark or the Common Law Mark;

(d)     Order Defendants, their representatives, officers, directors, agents, servants, employees, and attorneys, and any and all persons in active concert with them to transfer ownership and control of the URL www.synergya.co, and all related e-mail addresses, to Mr. Sabuco;

(e)     Order Defendants, their representatives, officers, directors, agents, servants, employees, and attorneys and any and all persons in active concert with them to fully compensate Mr. Sabuco for the preparation and distribution of any necessary corrective advertising;

(f)     Order an accounting of all of Defendants' profits derived from infringements, and award to Mr. Sabuco exemplary damages, attorney's fees and costs therefor;

(g)     Order monetary relief in the amount of any and all profits derived by Defendants from the sale of their services and for all damages sustained by Mr. Sabuco by reason of said acts of infringement and unfair competition complained of herein;

(h)     Order monetary relief in the amount of treble the amount of actual damages suffered by Mr. Sabuco;

(i)     Order monetary relief in the amount of Mr. Sabuco's reasonable attorneys'

fees and costs of suit; and

(j)     Award Mr. Sabuco such other and further relief as this Court deems just

and proper under the circumstances.

<u>JURY TRIAL DEMAND</u>

Plaintiff, John J. Sabuco hereby demands a trial by jury on all triable issues.

Dated: July 26, 2021                                     Respectfully submitted,

JOHN J. SABUCO


By:  /s/ Martin J McKenzie
                                              One of His Attorneys

Martin J McKenzie
Law Offices of Martin J McKenzie, Ltd.
910 W. Van Buren St. Suite 503
Chicago, Illinois 60607
(312) 687-0755
MJMcKenzielaw@gmail.com
Illinois ARDC #6231122


<u>VERIFICATION</u>

The undersigned, on oath deposes and says that the undersigned is the Plaintiff herein; that as such the undersigned has read the foregoing Pleading and has knowledge of the facts contained therein, and that under penalty of perjury, the undersigned hereby certifies that the contents of said Pleading are true, both in substance and in fact, except that as to facts, if any, alleged on information and belief, which the undersigned verily believes to be true.

_____
John J. Sabuco